**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

JULIAN GREEN

                    **Plaintiff,**

v.                                                    **Civil Action No. 2:09cv112**
                                                      **(Judge Maxwell)**

JIM RUBENSTEIN, Commissioner of Corrections,
TERESA WAID, Warden of HCC,
DAVID STELL, HCC Officer,
OFFICER MORALES, HCC Officer,
OFFICER MUSSI, HCC Officer,
OFFICER WARNER, HCC Officer.


                    **Defendants.**

**REPORT AND RECOMMENDATION**

**I.   Procedural History**


On September  1, 2009, the *pro se* plaintiff initiated this case by filing a complaint against the

above-named defendants.  On October 2, 2009, the plaintiff was granted permission to proceed as

a pauper.  On October 28, 2009, the plaintiff paid his required initial partial filing fee.  Upon a

preliminary review of the file, the undersigned determined that summary dismissal was not

appropriate at that time and directed the United States Marshal Service to serve the complaint.

On January 25, 2010, the defendants filed a Motion to Dismiss.  Because the plaintiff is

proceeding *pro se*, the Court issued a <u>Roseboro</u> Notice on January 26, 2010.[1]  The plaintiff filed a

response to the defendants' motion on February 17, 2010.  On February 25, 2010, the defendants

filed a reply.  Accordingly, this case is  before the undersigned for a report and recommendation on

---

[1] <u>Roseboro v. Garrison</u>, 528 F.2d 309, 310 (4th Cir. 1975) (finding that the court must inform a *pro
se* plaintiff of his right to file material in response to a motion for summary judgment).

the pending motion to dismiss.

## II.    Contentions of the Parties

### A.    The Complaint

In the complaint, the plaintiff alleges that while incarcerated at the Huttonsville Correctional Center,[2] he was assaulted on numerous occasions by the named officers, called racial epithets, and threatened with the possibility that he would be suffocated with a plastic bag.   More specifically, the plaintiff alleges that on July 12, 2009, defendants Stellar and James jointly assaulted him by choking him about the neck and slamming his face against the wall.  In addition, the plaintiff alleges that on July 26, 2009, defendant Morales woke him up near midnight for the stated purpose of conducting a "random" cell search. During this incident, the plaintiff alleges that he was stripped and cuffed behind his back, and defendant Morales bent his hand until his fingers and hand became severely injured while calling him a "piece of sh**."  Although the plaintiff gives no specific dates, he further alleges that he been called "nigger" and "monkey" by defendant Mussi and defendant Warner has punched him and threatened to suffocate him with a plastic bag. As relief, the plaintiff seeks a restraining order[3] and damages.

### B.    The Defendant's Motion to Dismiss

In their memorandum in support of their motion to dismiss, the defendants argue that the plaintiff's claims against Commissioner Rubenstein, former Warden Waide,[4] and Warden Hoke fail

---

[2]After the complaint was filed, the plaintiff was transferred to the Mount Olive Correctional Complex. (Doc. 15).

[3]Given that the plaintiff is no longer housed at the Huttonsville Correctional Center, his request for a restraining order is moot.  However, his transfer does not moot his claim for damages.

[4]Although the defendants supply no proof, they allege that defendant Waide died before the plaintiff initiated this lawsuit.  The summons for defendant Waide was returned unexecuted with the

to state claim because his allegations relate to their supervisory capacity. The defendants also argue that the plaintiff cannot show he was subjected to cruel and unusual punishment because he suffered *de minimis* injuries. In addition the defendants argue that the plaintiff has failed to state a claim upon which relief can be granted pursuant to his allegations of name calling. Finally, the defendants contend that they are entitled to qualified immunity.

## C.   The Plaintiff's Response to the Defendants' Motion to Dismiss

In his response to the motion to dismiss, the plaintiff indicates that he feels that Commissioner Rubenstein and the Warden of HCC should be held responsible for the physical and emotional assault he endured because they failed to react to his grievances. With respect to his excessive force claims, the plaintiff notes that in their sworn affidavits, defendants James and Stell stated that they used only necessary force to control him on July 26, 2009. However, in responding to his institutional grievance, the plaintiff maintains that they stated that no force was used, and now in their answer, again state that only necessary force was used. The plaintiff apparently argues that these contradictions are proof that excessive force was used. The plaintiff also argues that following the July 12, 2009, Nurse McCauley came to the incident scene but did not do a medical assessment and did not document the incident in his medical file. Following the July 26, 2009 incident, the plaintiff alleges that Nurse McCauley came to the scene at his request. He explained to her what had happened and that his right hand was painful and he needed medical attention. The plaintiff maintains that because she examined his hand while he was handcuffed, she could not have seen the injury. The plaintiff further states that he saw another nurse on July 29, 2009, because his hand

---

following remark: "Per Sgt. Scott at Mt. Olive Corr. Ctr. Teresa Waide had passed away. Adrian Hoke named as new warden." (Doc. 30, p.2).

was swollen and causing him pain. The nurse documented the injury and gave him some pain medication. He claims he was then seen by a radiologist and given two types of medication which he continues to take. The plaintiff alleges that he has a permanent defect in his right hand due to the assault by defendant Morales. Finally, the plaintiff clarifies that on August 3, 2009, he was assaulted by several officers while in the elevator on the way to the medical unit. He claims he was beaten, kicked and punched. He claims he was then placed on the medical floor in handcuffs and shackles, and this is when defendant Warner suggested that they get a plastic bag and tape to put over his head and face.

## D. **The Defendants' Reply**

In their reply, the defendants reiterate that the plaintiff suffered no more than a *de minimis* injury on any of the occasions about which he complains. In making this argument, the defendants refer to the medical reports tendered by the plaintiff. In addition, the defendants reiterate their argument that the plaintiff has set forth no evidence to substantiate the *de minimis* exception.

## III. <u>Standard of Review</u>

## A. <u>Motion to Dismiss</u>

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. <u>Mylan Labs, Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir.1993); <u>see also</u> <u>Martin</u>, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B.  Summary Judgment**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only

"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  Matsushita at 587 (citation omitted).

## IV.  Analysis

### A.  Defendants Jim Rubenstein, Teresa Waide, and David Stell

Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted).  Therefore, in order to establish liability under § 1983, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights.  See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988).  Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).  *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right under § 1983.  Rizzo v. Good, 423 U.S. 362 (1976).

With respect to defendants Waid, Rubenstein and Stell, the plaintiff asserts no personal involvement on the part of any of those defendants  in the alleged violations of his constitutional rights.  Instead, the plaintiff merely asserts that those persons had supervisory authority over the alleged violators, and they should have done something to prevent the alleged violations of his rights.

In Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit recognized that supervisory defendants may be liable in a Bivens action if the plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the

supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." In so finding, the Court recognized that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." Id. However, the plaintiff cannot establish supervisory liability merely by showing that a subordinate was deliberately indifferent to his needs. Id. Rather, the plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. Id.

In this case, the plaintiff has not alleged that defendants Waid, Rubenstein and Stell tacitly authorized or were indifferent to an alleged violation of his constitutional rights. Instead, it appears that those defendants simply failed to grant the plaintiff relief during the administrative remedy process. However, an administrator's participation in the administrative remedy process is not the type of personal involvement required to state a claim under § 1983. See Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003). Rather, such participation establishes, at best, that Waid, Rubenstein and Stell acted in their official capacities as the Warden of the Huttonsville Correctional Center and the Commissioner of the WVDOC. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. Id. at 166. In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. Id. (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978)). In this case, the plaintiff fails to assert that a policy or custom

of the entity played a part in the alleged violation of his constitutional rights.

Accordingly, the plaintiff cannot maintain this case against defendants Waid, Rubenstein and Stell, and those defendants should be dismissed from this action with prejudice.

## B. Excessive Force

The Eighth Amendment prohibits "the unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312 (1986). The use of excessive force may constitute cruel and unusual punishment. Hudson v. McMillian, 503 U.S. 1 (1992). An excessive force case has two prongs an objective prong and a subjective prong. Under the objective prong, the plaintiff must establish that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Norman v. Taylor, 25 F.3d 1259, 1262 (4th Cir.1994) (en banc), *cert. denied*, 513 U.S. 1114 (1995)(quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). Subjectively, the plaintiff must show that the "prison officials maliciously and sadistically used force to cause harm." Hudson, 503 U.S. at 9; Williams v. Benjamin, 77 F. 3d 756, 761 (4th Cir. 1996).

According to the Fourth Circuit Court of Appeals, "absent the most extraordinary circumstances" an individual who suffers only *de minimis* injuries cannot prevail on an Eighth Amendment excessive force claim. Riley v. Dorton, 115 F.3d 1159 (4th Cir.)(en banc), *cert. denied*, 522 U.S. 1030 (1997); Norman , 25 F.3d at 1263.[5] The Fourth Circuit Court of Appeals has further

---

[5] In both Riley and Norman, the Fourth Circuit Court of Appeals found that both the plaintiff's injuries and force used were *de minimis*. In Norman, a jail officer began swinging his cell keys in the direction of the prisoner's face when the prisoner became disruptive. The prisoner asserted that he put his hands up to cover his face, and the keys hit his right thumb causing his right hand to swell. The Court ruled that the prisoner sustained *de minimis* injuries proving that *de minimis* force was used. In Riley, the pre-trial detainee complained that he feared for his safety after the defendant police detective placed the tip of a pen in his nose and threatened to rip it open, and slapped the prisoner on the face. The Court of Appeals extended Norman to pre-trial detainees and held that Riley sustained *de minimis* injuries, thus demonstrating the

determined that a *de minimis* injury reveals that *de minimis* force was used. <u>Norman</u>, 25 F.3d at 1262. "The Eighth Amendments prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" <u>Hudson</u>, 503 U.S. at 9-10. However, if the force used is "repugnant to the conscience of mankind," i.e., "diabolic" or inhuman physical punishment, a prisoner can prevail on an excessive force claim even if the injuries sustained are *de minimis.* <u>Norman</u>, 25 F.3d at 1263.

In this particular case, the exhibits tendered by both the plaintiff and defendants establish that the plaintiff suffered no more than a *de minimis* injury. The first incident complained of by the plaintiff occurred on July 12, 2009, when he alleges that defendants Stell and James chocked him about the neck and slammed his face against the wall. However, an affidavit from Marlene McCauley, a nurse at HCC, indicates that she performed a medical assessment of the plaintiff following the incident. She notes that the plaintiff showed no signs of injury and was alert and oriented. Moreover, she did not observe any severe discoloration, swelling or bleeding. Although he yelled at her that he could not breathe, his raised voice and ability to speak appeared unaffected, and his breathing did not appear labored or otherwise affected despite his statement. In her professional opinion, the plaintiff suffered minimal, if any injuries as a result of the July 12, 2009, altercation. (Doc. 33-1, pp. 1-2).[6]

The second incident complained about by the plaintiff occurred on July 26, 2009, when he alleges that defendant Morales cuffed him and bent his hand until his fingers and hand area became severely injured. In her affidavit, Nurse McCauley also indicates that she provided a medical assessment of the

---

defendant used only *de minimis* force.

[6]Although there is no record of this assessment in the plaintiff's medical records, Nurse McCauley completed an Incident Report on July 14, 2009 at 3:15 a.m. detailing her examination of the plaintiff hat 11:20 p.m. on the 13th. (Doc. 37-3, pp. 4-5).

plaintiff after this incident. She observed no discoloration, swelling, or any sign of injury to the plaintiff's hands. She again noted her professional opinion that the plaintiff had suffered minimal, if any injuries as a result of the July 26, 2009, incident. (Doc. 33-1, p.2) In addition, the plaintiff's medical records indicate that the examination by Nurse McCauley revealed a small hard area below his ring finger on his right hand. However, he had full range of motion, his skin was dry, and he had no signs or symptoms of distress. (Doc. 36-2, p. 2). On July 29, 2009, the plaintiff was seen by a nurse because he complained his wrist was broken from the altercation on the 26th, and his range of motion was limited. Although the top of his right hand was swollen, the nurse noted that he had a fairly good grip. On July 30, 2009, the plaintiff voiced concern over having his right hand x-rayed. It was x-rayed on August 3, 2009, and was read as normal. (Doc. 36-2, p.11).

The final incident the plaintiff complains of was on August 3, 2009, when he alleges that he was assaulted in the elevator on the way to the medical unit. The plaintiff's medical records have numerous entries on August 3, 2009, beginning at 9:40 a.m., when the plaintiff refused to come for his x-ray because he wanted to wear his own clothes. The x-ray was eventually taken at 11:35 a.m. At 4:30 p.m., the plaintiff was carried into the medical unit after being restrained by officers due to resisting orders. The plaintiff was returned to his unit because he refused to answer questions posed by the nurse. Thereafter, the plaintiff was placed in four point restraints. However, beyond complaining about pain in his wrist, the plaintiff denied that he had any other problems. The plaintiff was seen again at 5:30 p.m., 7:30 p.m., 9:30 p.m., 11:30 p.m., and 1:30 a.m. on August 4, 2009. The plaintiff was noted to be belligerent, but at no time was he noted to be in pain. (Doc. 36-2, pp. 10-11).

Accordingly, nothing in the record supports a finding that the plaintiff received more than *de minimis* injuries during any of three incidents he recites. Furthermore, although a prisoner can prevail even if the injuries sustained are *de minimis*, there is nothing before the court that would establish that the force used was "repugnant to the conscience of mankind." Although the plaintiff makes a bald assertion

that (1) defendants James and Stell choked him and slammed his head against a wall; (2) defendant Morales bent his hand until his fingers were severely injured; and (3) several officers punched and threatened to suffocate him with a plastic bag, the medical evidence does not support those allegations. In addition, incident reports submitted by the defendants clearly establish that the plaintiff is prone to inappropriate behavior and fails to follow instructions given by correctional officers. Consequently, the plaintiff was physically restrained on each of the occasions he mentions, but he was seen by a nurse on each occasion and no injury was detected. Accordingly, given that the plaintiff's injuries were *de minimis*, there is noting before the court, other than the plaintiff's self serving allegation, to support a finding that the force used was more than a good faith effort to restore discipline. Therefore, the plaintiff's excessive force claim is due to be dismissed with prejudice.

## C. <u>Racial Epithets and Threats</u>

In his complaint, the plaintiff alleges that correctional officers have called him various racial epithets. However, name-calling alone cannot form the basis of a constitutional violation because a person has no liberty interest at stake. Numerous courts around the country have held that "even the most abusive verbal attacks do not violate the constitution." <u>Oltarzewski v. Rggiero</u>, 830 F.2d 136, 139 (9th Cir. 1987); <u>Collins v. Cundy</u>, 603 F.2d 825, 827 (10th Cir. 1979). Nor do words or threats amount to assault under 42 U.S.C. §1983. <u>Pierce v. King</u>, 918 F.Supp. 932 (E.D.N.C. 1996), aff'd, 131 F.3d 136 (4th Cir. 1997) cert. granted and judmt. vacated on other grounds, 525 U.S. 802 (1998). Likewise racial epithets do not implicate constitutional rights because, "no matter how abhorrent or reprehensible" a racial epithet may be, it cannot itself form the basis of a §1983 claim. <u>See</u> <u>Wade v. Fisk</u>, 176 A.D.2d 1087, 1089, 575 NYS.2d 394, 396 (1991).

## V. <u>Recommendation</u>

For the foregoing reasons, the undersigned recommends that the defendants' Motion to

Dismiss (dckt. 32) be **GRANTED,** and the plaintiff's complaint be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

 The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to the plaintiff's last known address as shown on the docket, and to counsel of record via electronic means.

DATED: April 19, 2010

 /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE